**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**TAMMY W.**

                                **Plaintiff,**                        **22-CV-990-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**

_____

**DECISION AND ORDER**

As set forth in the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings,

including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10.

**BACKGROUND**[1]

On February 10, 2018, plaintiff, at the age of 37, protectively filed an

application for Title II Social Security Disability benefits, alleging a disability onset date of

October 31, 2016. Dkt. #3, pp. 166-167.

In a Disability Report filed on March 6, 2018, plaintiff alleged she was

disabled due to post-concussion syndrome; neck injury; shoulder injury; light sensitivity;

_____

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

~ 1 ~

head injury; headaches; nausea; lifting anything over 20 pounds; no sitting over 30 minutes; and no standing more than 30 minutes.  Dkt. #3, p. 186.

Plaintiff's claim was denied on May 23, 2018, Dkt. #3, p. 84, and plaintiff requested a hearing. Dkt. #3, pp. 108-109. A hearing before Administrative Law Judge ("ALJ") Bonnie Hannan was held on October 21, 2019, and the ALJ issued an unfavorable decision on December 13, 2019. Dkt. #3, pp. 21-41. The Appeals Council denied review, and plaintiff filed a complaint in this Court on September 18, 2020. *Weese v. Comm'r of Soc. Sec.*, 1:20-cv-01336-EAW. On October 19, 2021, the parties stipulated that the case should be remanded to the Commissioner. Dkt. #3, pp. 855-857.

On January 6, 2022, the Appeals Council ordered a new hearing with instructions to the ALJ. Dkt. #3, pp. 849-854. A telephonic hearing was held on June 6, 2022, before ALJ Hannan, and plaintiff appeared with counsel. Dkt. #3, pp. 814-848.

The ALJ first asked plaintiff with whom she was living at the time of her alleged onset date, October 31, 2016. Dkt. #3, p. 821.[2] Plaintiff stated that she was living with her fiancé and three children, two of whom were minors and one who had just graduated from high school. *Id.* She was the primary custodian of her minor children. Dkt. #3, p. 822.

---

[2] Plaintiff's date last insured was September 30, 2021, Dkt. #3, p. 784, so the relevant covered period is October 31, 2016 to September 30, 2021.

Plaintiff testified that, at that time, she was receiving workers' compensation benefits, and her fiancé was not working. *Id.* She drove during the day but avoided driving at night, and her children walked to school. *Id.*

Plaintiff next testified that she completed eighth grade and can read and write English for most things. Dkt. #3, p. 823. Her last job was at Dollar General where she was an assistant manager. *Id.* She had also served as a cashier and helped to open and close the store. Dkt. #3, p. 824. The heaviest thing she had to lift and carry at Dollar General was display units, which weighed 50-100 pounds. *Id.*

Plaintiff testified that, prior to working at Dollar General, she worked as an assistant manager at a convenience store called Sugar Creek/Wilson Farms. *Id.* In that job, she made sure all orders were placed, and she did the paperwork for the cash and deposits. *Id.* The heaviest things she had to lift there were also 50-100 pounds. *Id.* She did not make the employees' work schedules. *Id.*

Next, plaintiff testified that she always wears sunglasses that have prescription lens for distance vision, as well as permanent tinting, because outside light and fluorescent lights in stores bother her. Dkt. #3, pp. 826-827.

During the relevant period, plaintiff always had someone go with her to do grocery shopping because of her anxiety and anger issues. Dkt. #3, p. 828. She could not do a lot of housework, so her daughter helped her. Dkt. #3, p. 829.

The ALJ asked plaintiff why she could not return to work, and plaintiff stated that she put in applications, but no one would hire her due to her restrictions. *Id*. She testified that she last applied for jobs between 2017 and 2018. *Id*.

Plaintiff testified that her restrictions were that she had to wear sunglasses and take frequent breaks, and she could not stand or sit for long periods of time. Dkt. #3, p. 830. She stated that these restrictions were given to her by a doctor. *Id*.

Plaintiff testified that standing and sitting cause pain to shoot through her neck and shoulders. *Id*. She was prescribed pain medications and went to physical therapy, which helped some. *Id*. Plaintiff testified that she could stand or sit for about 20-30 minutes before feeling pain. Dkt. #3, p. 831.

Upon examination by her counsel, plaintiff testified that, during the relevant period, she had migraines every day. Dkt. #3, p. 832. The migraines would feel like someone was crushing her head; her peripheral vision was affected; high pitch noises would irritate her, including her boyfriend speaking Spanish, which made her "want to rip his head off;" and the voice of her son who was going through puberty, which made her scream at him. Dkt. #3, p. 833.

Plaintiff testified that the medications she was given at that time did not help with the migraines. *Id*. Light intensifies the migraine pain, and so she wears sunglasses whenever she goes outside and sometimes inside if someone opens the curtains. *Id*.

Plaintiff's counsel next asked her about the accident at work in 2016. Plaintiff testified that she sat down in a chair at a desk, and the chair broke and she smacked the back of her head on the board which served as the top of the desk. Dkt. #3, p. 835. She also hit her shoulder on a filing cabinet. *Id.*

Plaintiff testified that she went to the emergency room three or four days later because nothing was getting better, and the migraines were becoming a problem. Dkt. #3, pp. 835-836.

Next, plaintiff testified that, during the relevant period, she could lift her arms in front of herself or overhead, but she would have pain in her arms and neck. Dkt. #3, p. 836. Plaintiff testified that she would have to turn her whole body instead of turning her neck. Dkt. #3, pp. 836-837. Looking up or down also made her dizzy. Dkt. #3, p. 837.

Plaintiff testified that she was prescribed medicine to address the nausea caused by the migraines, which helped sometimes. Dkt. #3, p. 838. She estimated that she could lift or carry less than twenty pounds. *Id.*

Next, plaintiff testified that she had problems remembering things and focusing, and that being around noise makes it worse and makes her angry. Dkt. #3, p. 839. Plaintiff testified that she may feel fine one minute, but if something triggers her anxiety, she has overwhelming feelings of anger and wants to hurt someone. Dkt. #3,

p. 840. She also has panic attacks which make things blurry, and she gets hot and irritable. Dkt. #3, pp. 841-842.

Next, the ALJ heard from Lakeisha Rogers, a Vocational Expert ("VE"). The VE testified that plaintiff's past work as a management trainee was classified as light work, although it was heavy as performed. Dkt. #3, p. 844.

The ALJ next asked the VE to assume a hypothetical individual of plaintiff's age, education, and job experience who is limited to light work with the following limitations: she can never work at unprotected heights or with moving mechanical parts; moderate noise; limited to simple routine, repetitive tasks; simple work-related decisions; tolerating few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; and no exposure to strobe lights, flashing lights, or bright lights, such as those found on a theater stage. Dkt. #3, p. 845. The VE testified that under this hypothetical the individual could not return to plaintiff's past work. *Id.*

The ALJ then asked the VE if the person could perform any other work. *Id.* The VE testified that the person could perform the jobs of office helper, housekeeping/cleaner, and collator operator, all light exertion jobs. Dkt. #3, pp. 845-846.

The ALJ then asked the VE to add that the individual could only occasionally reach overhead bilaterally and have occasional interaction with supervisors, co-workers, and the public. *Id.* at 846. The VE testified that these additional limitations would not

change her response. *Id.* However, the VE testified that adding that the person would need to wear dark glasses would likely eliminate the jobs she identified as well as other jobs. *Id.* at 847.

The VE next testified that employers typically will not tolerate an employee being off-task more than 10% during the workday and absent more than once a month. *Id.*

Finally, the ALJ asked the VE if her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and the VE responded:

> *Yes, with the exception that the DOT does not address overhead reaching*; interactions with co-workers, supervisors, or the general public. . . . *That part of my testimony comes from my education and experience as a rehab counselor and researcher.*

*Id.* (emphasis added).

The ALJ then asked plaintiff's counsel if he had any questions for the VE, and he said that he did not. Dkt. #3, p. 848.

On August 23, 2022, the ALJ issued an unfavorable decision finding that plaintiff was not disabled, Dkt. #3, pp. 780-813, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R.

§ 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of October 31, 2016 through September 30, 2021, her date last insured; (2) through the date last insured, plaintiff had the severe impairments of post-concussion syndrome, migraines, obesity, cervical spine disorder, cervical radiculopathy, major depressive disorder, and anxiety; (3) plaintiff's impairments did not meet or medically equal any listed impairment; (4) plaintiff had the RFC to perform light work[3] except she could never work at unprotected heights; could never work with moving mechanical parts; could work in moderate noise; was able to perform simple,

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

routine, and repetitive tasks; was able to make simple work-related decisions; was able to tolerate few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; could never be exposed to strobe lights, flashing lights, or bright lights, such as those found on a theater stage; could occasionally reach overhead bilaterally; and could have occasional interaction with supervisors, co-workers, and the public; (5) through the date last insured, plaintiff was unable to perform any past relevant work; (6) considering plaintiff's age, education, work experience, and RFC, through the date last insured, plaintiff was able to perform the occupations of office helper, housekeeping cleaner, and collator operator; and (7) plaintiff was not, therefore, under a disability within the meaning of the SSA from October 31, 2016, the alleged onset date, through September 30, 2021, the date last insured. Dkt. #3, pp. 785-807.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to

support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**

Plaintiff makes two challenges to the ALJ's decision: she argues that (1) the ALJ erred at step five of the sequential analysis by failing to reconcile the VE's testimony

with the DOT; and (2) the ALJ erred in evaluating medical opinion evidence. The Court will address each argument in turn.

### *Step-Five Analysis*

Plaintiff first argues that the VE's testimony was inconsistent with the DOT and that the ALJ failed to resolve this conflict, resulting in a decision not supported by substantial evidence. Dkt. #5-1, pp. 19-23.

"At step five of the sequential analysis, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy." *Tafazwa S. v. Comm'r of Soc. Sec.*, 1:22-CV-10736-GRJ, 2023 WL 6390625, at *5 (S.D.N.Y. Oct. 1, 2023). "The Commissioner bears the burden of proof at this step." *Id.* (citations and internal quotation marks omitted).

In *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87 (2d Cir. 2019), the Court of Appeals for the Second Circuit explained that under a 2000 Social Security Administration Policy Interpretation Ruling, the Commissioner relies primarily on the DOT to determine whether a particular job can accommodate a claimant's limitations, but she may also use vocational experts to resolve complex vocational issues. *Id.* at 91 (citation omitted).

If the Commissioner considers the testimony of vocational experts, she must be alert to any apparent unresolved conflicts between their testimony and the DOT.

*Id.* Further, the Commissioner has an affirmative responsibility to ask about any such conflict and to elicit a reasonable explanation for the conflict before relying on the vocational expert's testimony. *Id.*

Here, plaintiff argues that there was an unresolved conflict between the VE's testimony that plaintiff could perform the jobs of office helper, housekeeping cleaner, and collator operator—which require "frequent" reaching—and the RFC, which limited plaintiff to only "occasional" overhead reaching bilaterally. Dkt. #5-1, p. 20. The Court disagrees.

First, it is not disputed that the DOT, in defining reaching, does not distinguish between overhead reaching and reaching in other directions. Dkt. #5-1, p. 21. Courts in the Second Circuit have repeatedly held that "where the DOT is silent on an issue such as overhead reaching, the VE's testimony on that issue is not in conflict." *Crespo v. O'Malley*, CIVIL ACTION NO.: 22 Civ. 954 (SLC), 2024 WL 1255431, at *8 (S.D.N.Y. Mar. 25, 2024) (citations omitted). *See also Gibbons v. Comm'r of Soc.*, No. 22-2730, 2023 WL 3830774, at *4 (2d Cir. June 6, 2023) (summary order) (no conflict between DOT and VE testimony as to sit-stand option, use of a cane, and tinted glasses because DOT does not include those limitations); *Alexander P. v. Comm'r of Soc. Sec.*, Case # 24-CV-145-FPG, 2025 WL 2978772, at *4 (W.D.N.Y. Oct. 22, 2025) (no conflict between DOT and VE's testimony that plaintiff could perform jobs requiring "frequent reaching" notwithstanding limitation in RFC to occasional overhead reaching with right arm; while "the DOT addresses reaching generally, it does not address overhead reaching

requirements specifically"); *John B. v. Comm'r of Soc. Sec.*, Case # 19-cv-01113, 2021 WL 681283, at *4 (W.D.N.Y. Feb. 22, 2021) (collecting cases in this district holding that no conflict exists where DOT is silent on a particular restriction).

Furthermore, even if an apparent conflict existed here, the ALJ fulfilled her duty to resolve it. That is, the VE explained that the DOT does not address overhead reaching, and that her testimony that plaintiff could perform the three jobs she identified was based on her "education and experience as a rehab counselor and researcher." Dkt. #3, p. 847.

In *Reilly v. Comm'r of Soc. Sec.*, No. 21-8-cv, 2022 WL 803316 (2d Cir. Mar. 17, 2022), the Court of Appeals rejected a similar challenge. The Court held that the ALJ adequately resolved an apparent conflict between the DOT and the VE's testimony concerning, *inter alia*, plaintiff's ability to reach overhead where the ALJ asked about potential conflicts and the VE explained that his analysis was "based on his own expertise and labor market surveys he conducted." *Id.* at *2.

While plaintiff cites several cases which seem to apply a more demanding standard, *see, e.g., Rachel F. v. Comm'r of Soc. Sec.*, 1:21-CV-00324 CJS, 2023 WL 2595007 (W.D.N.Y. 2023), the Court concludes that those cases conflict with *Reilly*, and that the weight of authority in this district supports the Commissioner's position. *See Kathryn D. v. Comm'r of Soc. Sec.*, 1:22-cv-31-JJM, 2025 WL 2115487, at *4 (W.D.N.Y. July 29, 2025) (holding that ALJ adequately resolved potential conflict between DOT and

VE's testimony; VE testified that her assessment of the jobs plaintiff could perform with a reaching limitation was based on VE's "training and education and work experience as a vocational rehab counselor and how I would understand those jobs to be performed"); *Thomas K. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-00673-TPK, 2025 WL 484178, at *6 (W.D.N.Y. Feb. 13, 2025) (potential conflict adequately resolved where VE testified that his opinion was based on his professional experience and that DOT does not delineate between right and left extremities in defining "handling"); *Barbara W. v. Comm'r of Soc. Sec.*, Case No. 1:22-cv-00575-TPK, 2025 WL 276668, at *6 (W.D.N.Y. Jan. 23, 2025) (ALJ adequately resolved conflict where plaintiff could not reach overhead bilaterally, and all three jobs identified by VE required frequent reaching; VE explained that his opinion was "based on my experience with the jobs that I've offered"); *Aracelis N.-B. v. Comm'r of Soc. Sec.*, 1:23-CV-580-A, 2024 WL 4647610, at *5 (W.D.N.Y. Nov. 1, 2024) (potential conflict resolved where VE's testimony that plaintiff, who was limited to only occasional bilateral reaching, could perform jobs requiring "frequent" reaching was based on her decades of professional experience and job analyses); *Peter L. v. Comm'r of Soc. Sec.*, CASE # 1:21-cv-00341, 2024 WL 150098, at *4 (W.D.N.Y. Jan. 12, 2024) (ALJ resolved potential conflict where VE explained that the DOT did not address, *inter alia*, overhead reaching, and that his testimony about jobs plaintiff could perform was based on his professional experience); *Hallman v. Comm'r of Soc. Sec.*, CASE # 19-cv-00683, 2020 WL 3259255, at *5 (W.D.N.Y. June 12, 2020) (apparent conflict resolved by VE's testimony that his opinion was based on his "experience in disability management").

Moreover, courts in this district have found it relevant to the alleged inadequacy of a VE's explanation about a potential conflict with the DOT that plaintiff's counsel did not inquire into or question the VE's explanation on cross-examination. *See, e.g., Thomas K.*, 2025 WL 484178, at *6 ("Plaintiff's counsel did not question the expert on this or any other aspect of his testimony."); *Barbara W.,* 2025 WL 276668, at *6 (similar); *Aracelis N.-B. v. Comm'r of Soc. Sec.*, 1:23-CV-580-A, 2024 WL 4647610, at *5 (W.D.N.Y. Nov. 1, 2024) (similar); *Peter L.,* 2024 WL 150098, at *4 (similar); *Hallman*, 2020 WL 3259255, at *5 (similar).

Here, immediately on the heels of the VE's direct testimony, the ALJ asked plaintiff's counsel if he had any questions for the VE, and counsel responded that he did not. Dkt. #3, p. 848.

For these reasons, therefore, the Court finds no basis for remand based on this issue.

### *Evaluation of Medical Opinion Evidence*

Plaintiff's second argument is that remand is required because the ALJ erred in evaluating the opinions of consultative examiner Dr. Ingrid Wohlgemuth and plaintiff's counselor, LMSW Gloria Zukoski. Dkt. #5-1, pp. 24-30.

By way of background, before the ALJ considered the medical opinions, she reviewed plaintiff's own reports of her impairments and their impact on her activities and

abilities, including her 2018 function report and her hearing testimony on remand. Dkt. #3, p. 790. The ALJ concluded, however, that plaintiff's reported symptoms were not entirely consistent with the medical evidence. *Id.*

The ALJ reviewed plaintiff's medical records dating back to 2016, when she fell at work and hit her head. This evidence included hospital records; treatment records; records submitted in connection with plaintiff's application for worker's compensation benefits; imaging records; and reports of consultative examiners. Dkt. #3, pp. 790-792.

Against this backdrop, the ALJ then considered twelve medical opinions from eight different sources. Dkt. #3, pp. 793-803.

### Dr. Wohlgemuth

With respect to Dr. Wohlgemuth, the ALJ discussed the report of the consultative physical examination that she performed on April 13, 2018. Dkt. #3, pp. 263-266. After recounting plaintiff's subjective complaints and her reports of her activities of daily living, Dr. Wohlgemuth stated the objective findings of her examination. First, although plaintiff wore dark sunglasses during the exam, Dr. Wohlgemuth tested her vision and reported that plaintiff's vision was "Right 20/20, Left 20/25, Both 20/15 on a Snellen chart at 20 feet with glasses." Dkt. #3, p. 264.

Second, Dr. Wohlgemuth found that plaintiff appeared to be in no acute distress; had a normal gait; was able to walk on heels and toes without difficulty; could

squat fully; had a normal stance; used no assistive devices; needed no help changing for the exam or getting on or off the exam table; and was able to rise from the chair without difficulty. Dkt. #3, p. 264.

The other objective physical findings of Dr. Wohlgemuth's examination—including plaintiff's pulmonary, heart, musculoskeletal, and neurologic systems, as well as her fine motor activities—were all normal. Dkt. #3, pp. 265.

In her medical source statement, Dr. Wohlgemuth opined: "The claimant has a marked limitation for activities that require light exposure. She has schedule interruptions due to migraine headaches." Dkt. #3, p. 266.

The ALJ stated that she found this opinion unpersuasive, first noting that it was vague and failed to address off-task time, absenteeism, and how often plaintiff could be exposed to light. Dkt. #3, p. 793. That a medical opinion is stated in vague, rather than functional, terms is an appropriate basis for an ALJ to discount the opinion. *Tanya R. v. Comm'r of Soc. Sec.*, 1:24-CV-00375 EAW, 2026 WL 111320, at *5 (W.D.N.Y. Jan. 15, 2026) (citation omitted).

The ALJ then discussed various objective medical findings, including those in Dr. Wohlgemuth's report. Dkt. #3, p. 793. The ALJ acknowledged plaintiff's refusal to remove her sunglasses during the exam, but the ALJ noted that the exam revealed largely normal results in plaintiff's vision, as well as in all other bodily systems. *Id*.

The ALJ also cited medical records from 2021 and a psychiatric consultative examination in 2018 which reflected largely normal functioning. Dkt. #3, pp. 793-794. Finally, the ALJ reviewed records in which plaintiff reported a variety of daily activities— driving; taking public transportation; shopping; planning and hosting a baby shower; working on her house; and travelling to New York City to help clean an apartment—which she found also supported the RFC.

Plaintiff argues that this discussion was flawed because the ALJ failed to address the supportability and consistency factors. Dkt. #5-1, pp. 27-28. The Court disagrees.

It is well established that an ALJ's failure to use the words "supportability" and "consistency" is a procedural error not warranting remand where it is clear that the ALJ considered those factors. *Tanya R.*, 2026 WL 111320, at *4 ("Although the ALJ did not use the words 'supportability' and 'consistency,' it is clear that the ALJ considered these factors in evaluating Dr. Hoffman's opinion.") (citation omitted); *Jennifer S. v. Comm'r of Soc. Sec.*, 24-CV-334-LJV, 2026 WL 98423, at *3-4 (W.D.N.Y. Jan. 14, 2026) (ALJ's failure to explicitly discuss consistency factor was procedural error; remand not required because ALJ's reasoning could be gleaned from the record); *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp.3d 1, 10 (W.D.N.Y. 2022) ("Although the ALJ did not specifically use the words 'supportability' and 'consistency' in discussing Dr. Bing's opinion, it is clear from the record that the ALJ found his opinion to be inconsistent and

not supported by other evidence in the record, including the historical record and records from Plaintiff's treating sources.").

Such is the case here. The ALJ specifically discussed objective medical evidence that did not support Dr. Wohlgemuth's opinion. Dkt. #3, pp. 793-794. The ALJ noted that her opinion conflicted with other medical opinions, including those of Dr. Hughes and Chawla, who opined, respectively, that plaintiff was capable of light work with only postural limitations and that there was no ophthalmoscopic evidence to support her reported eye pain, headaches, or photophobia. Dkt. #3, pp. 794-798.[4]

In sum, a review of the record persuades the Court that the substance of the supportability and consistency regulations "was not traversed." *Jennifer S. v. Comm'r of Soc. Sec.*, 2026 WL 98423, at *3 (citation and internal quotation marks omitted).

The Court also rejects plaintiff's argument that the ALJ should have recontacted Dr. Wohlgemuth for clarification of her opinion and that the failure to do so left an evidentiary gap in the record. Dkt. #5-1, pp. 26-27.

To the contrary, the ALJ had a voluminous record on which to base her decision, including plaintiff's medical history dating back to 2016 and twelve medical opinions from eight different sources.

---

[4] In fact, Dr. Chawla opined that plaintiff "should be able to function as an assistant manager at the Dollar General." Dkt. #3, p. 331.

"[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Lakeisha P. v. Comm'r of Soc. Sec.*, CASE NO. 1:24-cv-00306 (JGW), 2025 WL 3506959, at *9 (W.D.N.Y. Dec. 8, 2025) (citation and internal quotation marks omitted). *See also Falco v. Comm'r of Soc. Sec.*, 21-CV-02999 (JS), 2025 WL 510061, at *9 (W.D.N.Y. Feb. 14, 2025) (noting that "the ALJ is under no such obligation to recontact treating sources or order consultative examinations as long as she could reasonably make a determination based upon the evidence already presented"); *Laura K. v. Comm'r of Soc. Sec.*, 23-CV-641 (JLS), 2025 WL 339006, at *6 (W.D.N.Y. Jan. 30, 2025) (similar).

As the Court in *Lakeisha P.* observed: "In this case, there were multiple medical expert opinions, at least seven, and a complete medical history spanning from 2016 through 2021. The record was certainly complete enough for the ALJ to make a decision." *Lakeisha P.*, 2025 WL 3506959, at *9.

In this regard, plaintiff's reliance on *Georgia H. v. Comm'r of Soc. Sec.*, 19-CV-6904-LJV, 2021 WL 22506 (W.D.N.Y. Jan. 4, 2021), is misplaced. There, the Court concluded that the ALJ erred by not filling a gap in the record because the ALJ rejected the *only* medical opinion in the record as "vague and ambiguous," but proceeded nonetheless to reach an RFC "out of whole cloth with no medical opinion to support it." *Id.* at *4.

In contrast, as discussed above, the ALJ here had a plethora of evidence, both objective records and medical opinions, from which to formulate an RFC without affording Dr. Wohlgemuth's opinion persuasive value.

Moreover, as the Commissioner argues, even though the ALJ found Dr. Wohlgemuth's opinion unpersuasive, she nonetheless reached an RFC that, in part, was more restrictive: the ALJ limited plaintiff to light work, whereas Dr. Wohlgemuth opined that plaintiff had no exertional limitations. And finally, the ALJ did incorporate some restrictions on plaintiff's exposure to bright or flashing lights. Dkt. #3, p. 789.

The Court thus concludes that the ALJ did not err in her evaluation of Dr. Wohlgemuth's opinion.

### Ms. Zukoski

Plaintiff's arguments regarding the ALJ's treatment of Ms. Zukoski's two opinions—one dated October 15, 2019 and the second dated May 9, 2022—essentially mirror her arguments regarding Dr. Wohlgemuth, primarily that the ALJ failed to discuss the supportability and consistency factors. Dkt. #5-1, pp. 28-30. Again, the Court disagrees.

Although the ALJ did not invoke these two terms, it is clear from a review of her lengthy discussion of Ms. Zukoski's opinions that, in substance, she considered both factors. Dkt. #3, pp. 800-803. For example, the ALJ contrasted Ms. Zukoski's opined

limitations with Ms. Zukoski's own treatment records reflecting a range of plaintiff's daily activities, including those mentioned above, as well as normal findings regarding mood, thought processes, attention, concentration, speech, memory, and judgment. *Id.*

The ALJ also contrasted Ms. Zukoski's opinions with the results of the April 13, 2018 psychiatric consultative examination by Dr. Adam Brownfeld. There, Dr. Brownfeld noted that plaintiff drove herself to the examination; she reported she was able to dress, bathe, groom herself, manage her own money, drive, take public transportation, and had a good relationship with her children. On exam, plaintiff was cooperative, well-groomed, had appropriate eye contact, normal motor behavior, fluent and clear speech, adequate expressive and receptive language, coherent and goal-directed thought processes with no evidence of hallucinations, delusions, or paranoia; she demonstrated a euthymic mood; she had clear sensorium; and she was oriented to person, place, and time. Dkt. #3, pp. 801-803.

It is thus clear from the ALJ's decision that she considered to what degree the opinions of Ms. Zukoski were consistent with or supported by other evidence in the record.

"In sum, the ALJ followed the regulations when evaluating the medical opinions in the record. . . . To the extent Plaintiff argues otherwise, her arguments amount to a disagreement with the ALJ's weighing of the evidence, and it is not the function of

this Court to re-weigh evidence or to consider *de novo* whether [Plaintiff] is disabled." *Tanya R.*, 2026 WL 111320, at *6 (citation and internal quotation marks omitted).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #5) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #6) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            January 23, 2026

                          s/ H. Kenneth Schroeder, Jr.
                         **H. KENNETH SCHROEDER, JR.**
                         **United States Magistrate Judge**